EL PUEBLO DE PUERTO RICO, apelado, *v.* RAMÓN L. ROSADO FIGUEROA, acusado y apelante.

*Número:* CR-93-31          *Resuelto:* 5 de julio de 1995

*Nicolás Torres Marrero,* abogado del apelante; *Pedro A. Delgado Hernández, Procurador General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

## SENTENCIA

Juzgamos un "tipo de conducta antisocial [que] mina la fe del Pueblo en el Gobierno y sus efectos nocivos permean los intersticios de la madeja social, resquebrajando el delicado equilibrio que debe existir entre los intereses del individuo y los mecanismos de coexistencia y convivencia comunitaria". *Pueblo v. Márquez y Bermúdez,* 122 D.P.R. 93, 94 (1988).

I

Ramón L. Rosado Figueroa —empleado de la Oficina Regional de Bayamón de la Administración de Reglamentos y Permisos (en adelante A.R.Pe.)— fue denunciado junto con Raúl Elías Rodríguez de soborno *agravado.* Art.

210 del Código Penal, 33 L.P.R.A. sec. 4361. Fue asistido por el Lcdo. Víctor M. Casal. Luego del trámite de la vista preliminar e incluso una en alzada, dicha denuncia fue reducida a soborno *simple*. Art. 209 del Código Penal, 33 L.P.R.A. sec. 4360.

Después de unas mociones e incidentes sobre el descubrimiento de prueba y una solicitud de supresión de testimonio, Rosado Figueroa solicitó un juicio por separado. Oportunamente el Tribunal Superior, Sala de Bayamón (Hon. Ahmed Arroyo Pérez, Juez) accedió. Transfirió el juicio en su fondo para el 16 de junio de 1992, y aclaró que en ese "día dispondr[í]a sobre el caso que qued[aría] y que Sala se va a trasladar y comenzar a ver uno de los dos casos ese día". *Minuta* de 1ro de junio de 1992; A.O., pág. 12.

El 16 de junio comparecieron a la Sala del Juez Arroyo Pérez ambos acusados. Rosado Figueroa asistido de los Lcdos. Víctor Casal y Reinaldo Arroyo Rivera; Elías Rodríguez, asistido del Lcdo. Francisco Valcárcel Mulero, y por el Ministerio Fiscal comparecieron la Lcda. Mayra E. López Mulero y el Lcdo. Wilfredo Morales. El acusado Rosado Figueroa renunció válida y concientemente al Jurado, ante lo cual el Juez Arroyo Pérez —conforme con lo anunciado en el señalamiento anterior— trasladó su caso a la Sala presidida por el Hon. Juez Hiram Torres Rigual. Cumplida esa orden, una vez ante el Juez Torres Rigual, el Ministerio Fiscal planteó que la intervención del licenciado Arroyo como coabogado de Rosado Figueroa generaba serios conflictos de intereses por ser un fiscal delegado de la Oficina del Fiscal Independiente. Argumentada la cuestión, el tribunal lo relevó.[1] Suspendió y transfirió la vista para el

---

[1] Esta Resolución, con la cual coincidimos, dispone:

"El Ministerio Público ha planteado ante nos la posible existencia de un serio conflicto de intereses al comparecer el Lic. Reinaldo Arroyo como abogado del acusado en este caso, siendo a su vez uno de los fiscales delegados de la Oficina del Fiscal Especial Independiente. Concurrimos con la posición del Ministerio Público.

día siguiente a las 2:00 P.M., y así dar oportunidad al licenciado Casal de acudir ante este Foro para una petición de *certiorari*. Los testigos fueron juramentados y citados bajo apercibimiento.

Al otro día comenzó el juicio con la presentación de varios testigos y de la prueba documental.(²) Concluido el desfile de la prueba, el tribunal emitió un fallo de culpabilidad, dictamen que, en reconsideración, reiteró.

Después de otros trámites, incluso la renuncia del licen-

---

"Se trata en este caso de un delito de soborno imputado a un empleado público consistente en haber solicitado y recibido dinero para llevar a cabo determinados actos relacionados con su cargo.

"La preocupación primordial del Legislador al crear el cargo del Fiscal Especial Independiente es la de restaurar la confianza del público en su gobierno y en sus servidores públicos, penalizando cualquier conducta delictiva e indebida por un funcionario gubernamental.

"El Lic. Reinaldo Arroyo en sus funciones oficiales como Fiscal delegado de la Oficina del Fiscal Especial Independiente tiene sobre sus hombros la responsabilidad ineludible de establecer la culpabilidad más allá de duda razonable en los casos que se le refieren.

"Si bien pudiera concluirse que una lectura superficial del texto de la ley que crea el Fiscal Especial Independiente no reconoce el conflicto planteado por el Ministerio Público, sin embargo, un examen más cuidadoso del estatuto, de sus propósitos e intereses sociales que le animan; y, tomando en consideración los cánones de ética profesional que proscriben aún la apariencia de conducta impropia por los abogados, nos convencen el planteamiento del Ministerio Público.

"En su consecuencia, se ordena al abogado Reinaldo Arroyo que se abstenga de participar como abogado en este caso.

"Nuestra Resolución en forma alguna pone en duda la capacidad ética y profesional del licenciado Arroyo, cuyas ejecutorias como fiscal conocemos, por haber participado en varios casos ante este juez. Los intereses del acusado quedan protegidos por la representación que ostenta en el juicio el Lic. Víctor Miguel Casals, quien lo ha representado desde la vista preliminar y ha comparecido en todas las etapas de los procedimientos.

"Los hechos de este caso, según la acusación, ocurrieron en junio de 1991 y la acusación se presentó en febrero de 1992. No es hasta el 12 de mayo pasado, que posterior al señalamiento del juicio, el licenciado Arroyo se incorpora a la Defensa.

"El juicio puede muy bien continuar *mañana miércoles 17 de junio de 1992, a las 2:00 de la tarde*, sin perjuicio de los derechos del acusado." A.O., págs. 22–23.

(²) Por el Pueblo declararon Erick Hernández Navarro —agente investigador del Negociado de Investigaciones Especiales (en adelante N.I.E.)— Francisco Salgado (Piquín), el agente del N.I.E. Rafael Fax, la Sra. Ada Guevara —Directora de Personal de la Administración de Reglamentos y Permisos (en adelante A.R.Pe.)— el Ing. Juan De Jesús, Director de la Oficina Regional de Bayamón de A.R.Pe., y la Sra. Nydia Arroyo Fuentes, Secretaria del N.I.E.

Por la defensa declararon Israel J. Rivera Cruz, compañero de oficina del acusado y Ministro Evangélico. Éste, al igual que la estipulación de las declaraciones de los testigos Ana María Elías y Cándido Reyes, fue en torno a la buena reputación del acusado.

ciado Casal y la admisión del Lcdo. Nicolás Torres Marrero como nuevo abogado de Rosado Figueroa, dicho tribunal lo condenó a seis (6) años de reclusión penitenciaria. Por no autorizarlo la ley, denegó la suspensión de la sentencia. No conforme, apeló.

Analizar y juzgar los méritos de su alegato ha sido difícil. No se enumeran ni discuten, en específico, los señalamientos de error, sino más bien se engloban y se mezclan con varios planteamientos cortos, cuya argumentación excede escasamente un total de dos (2) páginas de tamaño legal. Ante esta situación, adoptamos la técnica expositiva usada por el Procurador General de "identificarlos de la lectura del apartado dedicado a la argumentación de errores". Informe, pág. 2.

## II

1. "Cometió error el tribunal al declarar culpable al aquí acusado del delito de soborno en ausencia de prueba de que tuvo una participación activa y directa en los hechos que culminaron en la acusación." Informe, pág. 2.

El argumento del apelante Rosado Figueroa parte de la premisa errónea de que el delito de soborno sólo existe si medió de su parte y tuvo una *participación activa y directa* en los hechos. Decimos errónea, pues bajo el Art. 209 del Código Penal, *supra*, que tipifica ese delito,[3] en interacción con la amplitud del Art. 35 del Código Penal, 33 L.P.R.A. sec. 3172, que define a los *autores, se consideran*

---

[3] Dispone:

"Todo funcionario o empleado público, o jurado, o árbitro, o cualquier persona autorizada en ley *para oír o resolver alguna cuestión o controversia*, que solicite o reciba, directamente o por persona intermedia, para sí o para un tercero, dinero o cualquier beneficio, o aceptarse una proposición en tal sentido, por realizar un acto regular de su cargo o función, será sancionado con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo, de quince (15) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años." (Énfasis suplido.) 34 L.P.R.A. sec. 4360.

*como tales* los instigadores, colaboradores y cómplices, entre otros.

Así aclarado, basta remitirnos a la prueba no contradicha por voz del agente Hernández Marrero, relativa al soborno:

Manifestó que mientra[s] conversaba con Piquín (Sr. Francisco Salgado) llegó el Sr. Rosado, que era un hombre alto y de barba blanca. Fue entonces que Raúl Elías presentó a dicho señor como Rosado. *Este se sentó a su lado y participa de la evaluación que Piquín hacía del plano y croqui[s] que le fuera entregado. Añadió que en ese momento le dice a Rosado, que Raúl le había dicho que llevara un dinero para entregárselo; y que lo tenía encima. Rosado le dijo que no le diera el dinero allí porque los estaban velando y aquel sitio estaba caliente. Raúl interrumpe la conversación y propone que le dé el dinero a él y que luego él se lo entregaría a Rosado. Rosado reacciona conforme con la idea y le manifiesta que Raúl es de su confianza, que le diera el dinero a él, que luego Raúl se lo entregaría.* (Énfasis suplido.) E.N.P. enmendada, pág. 5.

2. "Al eliminar el tribunal al Lcdo. Reynaldo Arroyo como abogado principal del apelante, el Tribunal [co]nculcó su derecho a una defensa efectiva, adecuada y razonable, pues dicho letrado era quien mejor conocía los hechos del caso y el que estaba preparado para su defensa." (Escolio omitido.) Informe, pág. 2.

El señalamiento carece de méritos. Hemos transcrito, en el esc. 1, la resolución que contiene los fundamentos válidos para esa decisión judicial. Los hechos se consumaron el 14 de junio de 1991. Desde ese mismo mes y primer momento, el licenciado Casal compareció y lo asistió como abogado de récord. La acusación se presentó el 29 de febrero de 1992, pero no fue hasta el 12 de mayo de 1992 que el Lcdo. Reinaldo Arroyo anunció que iba a unirse a la defensa mediante una moción. La resolución del Juez Torres Rigual, en la cual lo relevó, fue el 16 de junio de 1992. A esa fecha, el licenciado Casal lo había representado de manera satisfactoria y había planteado con diligencia varias cuestiones sobre el descubrimiento de prueba, la supresión de testimonio, etc.

Los autos y la prueba descartan toda contención posible de que Rosado Figueroa no estuvo representado adecuadamente en el proceso. No hay la más mínima *scintilla* de prueba en la cual se pueda apoyar que el licenciado Casal lo representó pobre o deficientemente; menos, que su defensa fuera perjudicial. *Pueblo v. Morales Suárez,* 117 D.P.R. 497 (1986); *Pueblo v. Marrero Laffose,* 95 D.P.R. 186 (1967); *Pueblo v. Del Valle,* 91 D.P.R. 174 (1964); *Pueblo v. Torres,* 81 D.P.R. 678 (1960).

> 3. "Erró el Tribunal de instancia al encontrar culpable al acusado-apelante sin que hubiese el Estado establecido que se sometiera a la Oficina de Arpe en Bayamón planos y otros documentos que son indispensables en las solicitudes corrientes de permiso para construcción. Tampoco hubo evidencia de que el acusado hiciera gestión legal alguna ante ARPE, o que dicha agencia tuviera que intervenir con planos y proyectos relacionados con el presente caso." Informe, pág. 2.

No tiene razón. Correctamente —según resolvimos en *Pueblo v. Bigio Pastrana,* 116 D.P.R. 748 (1985)— el Procurador General nos expone que el delito de soborno del Art. 209 del Código Penal, antes transcrito, equivale "al delito de cohecho en los derechos positivos Español y Argentino". Informe, pág. 7. Al decir de Eugenio Cuello Calón (*Derecho Penal,* Vol. I, pág. 442), según citado como autoridad por la doctora Dora Nevares-Muñiz en el *Código Penal de Puerto Rico: revisado y comentado,* Hato Rey, Ed. Inst. Desarrollo del Derecho, 1993, pág. 335:

> El delito se configura tan pronto la persona o funcionario público acepta la proposición objeto del soborno, o cuando solicita el beneficio por sí o por medio de una tercera persona a cambio de llevar a cabo un acto regular de su cargo o función. No es necesario que el acto delictivo objeto del soborno se lleve a cabo.

No era, pues, necesario probar que Rosado Figueroa había hecho gestiones legales ante A.R.Pe., agencia que está encargada por ley para aprobar planos y proyectos de construcción.

4. "[E]l Tribunal de instancia cometió error de derecho al admitir una confesión que hiciera el co-acusado [sic] Raúl Elías y que fuera le[í]do totalmente por el magistrado en el comienzo del proceso, aunque luego la rechazó por vía de una reconsideración planteada por la defensa." Informe, pág. 2.

Tampoco tiene razón. Aunque inicialmente el ilustrado tribunal sentenciador admitió la declaración jurada del coautor Elías Rodríguez, en reconsideración la rechazó. Ello no tiene el alcance que pretende atribuírsele.

*Primero*, según expuesto, el caso se presentó ante Tribunal de Derecho; no estamos ante la situación en que una declaración de ese tipo pueda configurar influencia indebida a un Jurado. A diferencia, el juez aquí es un técnico del derecho —*Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 826 (1983)— de vasta experiencia y ecuanimidad. Y *segundo*, la declaración, aunque más extensa y detallada, esencialmente reproduce la teoría que el Fiscal probó. En este sentido, repetimos, si bien es más específica y entra en otros extremos, su sustrato es el mismo.

5. "Erró el Tribunal de instancia al descartar el testimonio del testigo Francisco Salgado Aguedo en el sentido de que él había tratado con el co-acusado Raúl Elías y con el agente Erick Hernández. Y que el dinero en poder del agente era para ser entregado únicamente al testigo, ya que él era la persona que había pedido dinero por sus servicios en la preparación de planos, el logro de la firma de un ingeniero y la aprobación de la descrita agencia del gobierno." Informe, pág. 2.

Otra vez la premisa fáctica es errónea. Todo lo contrario, el testigo Francisco Salgado "declaró que mientras se encontraba en la mesa y en su presencia, Manolo le preguntó a Rosado: '¿Y lo tuyo?'; y que Rosado le contestó: 'no... lo mío dáselo a Pote' ". E.N.P. enmendada, pág. 9. Evidentemente el testimonio de Salgado, junto a los demás testigos, no exime de responsabilidad penal al apelante Rosado Figueroa.

6. "[E]rró el Tribunal de instancia al aceptar la declaración del agente Erick Hernández como base para la convicción, ha-

biendo sido dicho testimonio impugnado por el propio testigo del Ministerio Público Agente Fax." Informe, pág. 3.

La lectura de los testimonios de estos dos (2) testigos (E.N.P. enmendada, págs. 2–7 y 10–11), no revela la contradicción alegada. Distinto a su contención, ambos testigos lo situaron en el mismo lugar, hora y ante las mismas personas.

7. "Erró el Tribunal cuando declaró sin lugar la moción de la defensa interesando la reconsideración del fallo, a pesar de que el Ministerio Público ni replicó ni se opuso a dicha moción." Informe, pág. 3.

Coincidimos con el Procurador General de que el "señalamiento es a todas luces inmeritorio. El Ministerio Público no viene obligado a replicar ni formular oposición a una moción de reconsideración de la defensa". Informe, pág. 11.

8. "[E]rró en perjuicio de los derechos del apelante el Tribunal de instancia cuando denegó otra moción de reconsideración presentada por el apelante al amparo de las normas de equidad." Informe, pág. 3.

Sabido es que sólo cuando no exista una ley aplicable al caso, podemos en justicia invocar y resolver conforme con la equidad. *Noriega v. Gobernador*, 122 D.P.R. 650, 680 (1988); *Collazo Cartagena v. Hernández Colón*, 103 D.P.R. 870, 874 (1975).[4]

Aquí, el llamamiento en equidad del apelante Rosado Figueroa, en lo esencial, está apoyado en que se le aceptó al coacusado Elías Rodríguez una alegación de culpabilidad por un delito menor y, subsiguientemente, cualificó y recibió una sentencia suspendida. Cuestiona con vehemencia "esa justicia"; se queja de que ande libre, habiendo sido aquél el autor y principal instigador del soborno.

---

[4] En su orden jerárquico, las fuentes de derecho son la Constitución, las leyes, las reglas y los reglamentos aprobados y promulgados por los organismos públicos, y las ordenanzas municipales.

No nos convence. *Primero*, quien reclame equidad, ha de tener las manos limpias. *Segundo*, el apelante Rosado Figueroa olvida que, distinto a Elías Rodríguez, negó los hechos. Como resultado, el Estado tuvo que poner en movimiento toda la costosa y sobrecargada maquinaria judicial. Y *tercero*, fue él como empleado público, no Elías Rodríguez, la persona quien traicionó la confianza pública depositada por la ciudadanía. *Sin él no hubiese sido posible el soborno*; delito que viola "el orden moral y los valores fundamentales de la administración pública puertorriqueña". *Pueblo v. Bigio Pastrana*, supra, pág. 755.

9. "[E]rró el Tribunal de instancia al dirigir el juicio en el presente caso un juez incapacitado para serlo, ya que, según la información que el apelante considera cierta, el magistrado que presidió su caso tenía más de setenta años cuando lo hizo, lo cual lo descalificaba constitucionalmente para entender en el caso." Informe, pág. 4.

Recientemente, en *Pueblo v. Ramos Santos*, 138 D.P.R. 810 (1995), al aplicar la doctrina de funcionario de facto, resolvimos contra igual planteamiento. Nada más hemos de añadir.

*Se confirma la sentencia apelada.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García disintió por los mismos fundamentos expuestos en su disenso en *Pueblo v. Ramos Santos*, supra. El Juez Asociado Señor Rebollo López emitió una opinión disidente. El Juez Asociado Señor Hernández Denton disintió sin una opinión escrita.

(*Fdo.*) Francisco R. Agrait Lladó
Secretario General

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Un examen del expediente y de los autos originales revela que el Tribunal convenientemente *omite señalar*, en la sentencia mayoritaria que emite, varios aspectos, sucesos o incidentes ocurridos en el presente caso que, a nuestra manera de ver las cosas, demuestran que en el mismo *no* se le ha hecho cumplida justicia al apelante Rosado Figueroa.

En *primer* lugar, se omite mencionar que a las *dos* (2) personas originalmente acusadas en el presente caso —al apelante Rosado Figueroa y al coacusado Elías Rodríguez— el Ministerio Fiscal les *ofreció reducirle,* si se declaraban culpables, el delito imputado de soborno a un cargo por tentativa del mismo con una recomendación de que se le concediera un sentencia suspendida; oferta que el coacusado Rodríguez aceptó, disfrutando hoy en día de libertad condicional. Igualmente omite señalar el Tribunal que la razón por la cual rechazó dicha oferta el apelante Rosado Figueroa lo fue que él entendía que era totalmente inocente del cargo que se le imputaba. Nosotros los jueces no podemos ser tan ingenuos como para creer cosas que nadie más creería. *Pueblo v. Luciano Arroyo*, 83 D.P.R. 573, 582 (1961). Tenemos que *asumir* que la razón que tuvo el Estado para —no obstante, en palabras de la mayoría, encontrarse ante un "tipo de conducta antisocial [que] mina la fe del Pueblo en el Gobierno" (opinión mayoritaria, pág. 914, citando a *Pueblo v. Márquez y Bermúdez*, 122 D.P.R. 93, 94 (1988)— *ofrecer reducir* la calificación del delito, con la promesa de probatoria, lo fue que realmente *no* contaba con prueba, suficiente en derecho, para sostener y probar la acusación por el delito de soborno; situación que *resulta evidente* de un examen de la relación que de los hechos hacen las partes.

En *segundo* término, la mayoría *no* hace mención al-

guna del hecho de que el apelante Rosado Figueroa —quien había renunciado a su derecho a juicio por jurado ante el Hon. Juez Ahmed Arroyo Pérez— *infructuosamente intentó retirar dicha renuncia al percatarse de que su caso se iba a ventilar ante otro magistrado distinto*; esto es, ante el Hon. Juez Hiram Torres Rigual. Aquellos que han *practicado* la profesión en el campo de lo criminal están conscientes del hecho de que uno de los *factores principales* que tanto el acusado como su abogado toman en consideración, al decidir si renuncian o no a dicho derecho, lo es el *magistrado en particular* ante quien se va a ventilar el caso. *Ello, dicho sea de paso, es algo enteramente legítimo.* No es lo mismo ver un caso, por ejemplo, ante un juez de mucha experiencia en la Judicatura que ante uno que lleva muy poco tiempo ocupando tan honrosa posición, como tampoco es lo mismo ver un caso ante un juez que, con anterioridad a su juramento como tal, practicó la profesión de abogado que dilucidar el mismo ante un magistrado que, por esos designios de Dios, obtuvo su nombramiento sin nunca antes haber practicado la misma antes de su nombramiento como tal. *A nuestra manera de ver las cosas, el juicio por tribunal de derecho debe ser celebrado, de ordinario, ante el juez ante quien el acusado renunció el derecho constitucional a juicio por jurado.*

Por *último*, e independientemente del hecho de que no tenemos duda alguna de que el Lcdo. Víctor M. Casals es un abogado ducho y competente en esta materia, somos del criterio que el tribunal de instancia *erró* al descalificar, *de manera sumaria*, como abogado del apelante Rosado Figueroa al Lcdo. Reinaldo M. Arroyo. *Nada* en la ley que creó el cargo de Fiscal Especial Independiente —y, por ende, el de "fiscal delegado"— impedía que esta persona actuará como abogado en el presente caso. *Ello no es un error sin importancia. El apelante tenía el derecho a ser representado por el abogado, o los abogados, de su*

*selección. El mero hecho de que el apelante contara con otro abogado competente no es suficiente, de por sí, para privarlo de los servicios de un sequndo abogado.*

*La determinación que hoy hace el Tribunal a estos efectos resulta ominosa para la práctica de la profesión en el campo de lo criminal.* Es completamente *usual y normal* que un acusado sea representado por más de un abogado. *Ello ocurre todos los días.* De esta forma, *no sólo se comparten, y dividen, responsabilidades sino que se logra aunar talento en defensa de los mejores intereses de un cliente.*

La *errónea* decisión que hoy emite el Tribunal es un ejemplo más, y consecuencia, de la *falta de experiencia y conocimiento* de los integrantes del mismo en el campo de lo criminal. Para el apelante Rosado Figueroa, y su familia, dicha situación resulta ser *no sólo lamentable sino trágica.*